UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK GULOW, D.O.<br><br>Defendant.<br>_____/ | Case: 2:22−cr−20358<br>Assigned To : Berg, Terrence G.<br>Referral Judge: Patti, Anthony P.<br>Assign. Date : 7/11/2022<br>INFO USA V GULOW (LH)<br><br>VIO: 18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 982 |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18,

United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare was divided into four parts and covered specific benefits, items, and services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4.      Specifically, Medicare Part B covered medically necessary physician office services and outpatient care, including the ordering of durable medical equipment, prosthetics, orthotics, and supplies ("DME") that were ordered by licensed medical doctors or other qualified health care providers.

5.      Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6.      To receive Medicare reimbursement, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855. The application contained certifications that the provider agreed to abide by Medicare laws and regulations, and that the provider "[would] not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [would] not submit claims with deliberate ignorance or reckless disregard of their

truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

7. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims, including claims for DME. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B in the state of Michigan. AdvanceMed (now known as "CoventBridge Group") was the Zone Program Integrity Contractor ("ZPIC") for the state of Michigan, and as such, it was the Medicare contractor charged with investigating fraud, waste, and abuse.

### Durable Medical Equipment

8. Medicare covered an individual's access to DME, such as off-the-shelf ("OTS") ankle braces, knee braces, back braces, elbow braces, wrist braces, and hand braces (collectively, "braces"). OTS braces required minimal self-adjustment for appropriate use and did not require expertise in trimming, bending, molding, assembling, or customizing to fit the individual.

9. A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment or diagnosis of the beneficiary's illness or injury and prescribed by a licensed physician. In claims submitted to Medicare for the reimbursement of provided DME, providers were required to set forth, among other information, the beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the

3

equipment was provided, the cost of the equipment, and the name and provider number of the provider who prescribed or ordered the equipment. To be reimbursed from Medicare for DME, the claim had to be reasonable, medically necessary, documented, and actually provided as represented to Medicare.

10. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. For certain DME products, Medicare promulgated additional requirements that a DME order was required to meet for an order to be considered "reasonable and necessary." For example, for OTS knee braces billed to Medicare under the Healthcare Common Procedures Coding System ("HCPCS") Code L1851, an order would be deemed "not reasonable and necessary," and reimbursement would be denied unless the ordering/referring physician documented the beneficiary's knee instability using an objective description of joint laxity determined through an examination of the beneficiary.

### Telemedicine

11. Telemedicine provided a means of connecting patients to doctors by using telecommunications technology to interact with a patient.

12. Telemedicine companies provided telemedicine services to individuals by hiring doctors and other health care providers. Telemedicine companies typically paid doctors a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed insurance or received

4

payment from patients who utilized the services of the telemedicine company.

13. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility – not at a beneficiary's home – during the telemedicine consultation with a remote practitioner.

14. Medicare regulations regarding telehealth concerned payment for telehealth consultation services only and did not prohibit ordering DME where the consultation itself was not billed to Medicare. However, some Medicare contractors took the position that the failure to comply with these requirements could inform their determination of medical necessity for DME ordered.

**The Defendant**

15. Defendant MARK GULOW, a resident of Garden, Michigan, was a medical doctor licensed to practice in Michigan. GULOW was a Medicare provider and was required to abide by all Medicare rules and regulations. GULOW worked as an independent contractor for purported telemedicine companies, including Company 1, described below.

5

**Related Individuals and Entities**

16. Company 1 was a Florida company that operated as a purported telemedicine company that did business throughout the United States.

17. M.L. was a beneficiary residing in the Eastern District of Michigan.

**COUNT 1**
**18 U.S.C. §§ 1347 and 2**
**(Health Care Fraud)**

18. Paragraphs 1 through 17 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

19. From in or around April 2020, and continuing through in or around February 2021, the exact dates being unknown to the United States Attorney, in the Eastern District of Michigan, and elsewhere, the defendant, MARK GULOW, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a Federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

### Purpose of the Scheme and Artifice

20. It was a purpose of the scheme and artifice for MARK GULOW and his accomplices to unlawfully enrich themselves by: (a) submitting and causing the submission of false and fraudulent claims to Medicare that were (i) medically unnecessary, (ii) not eligible for Medicare reimbursement, and (iii) not provided as represented; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

### The Scheme and Artifice

21. On or about January 28, 2003, MARK GULOW certified to Medicare that he would comply with all Medicare rules and regulations. For all times during the charged period, MARK GULOW was a Medicare provider and was required to abide by all Medicare rules and regulations and federal laws, including that he would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare.

22. Thereafter, MARK GULOW devised and engaged in a scheme to submit false and fraudulent claims to Medicare for DME that was medically unnecessary and not eligible for reimbursement from Medicare.

23. MARK GULOW agreed with others at Company 1 to sign DME orders for Medicare beneficiaries in exchange for approximately $15 per patient

7

consultation.

24. MARK GULOW received pre-filled unsigned prescriptions for DME, from accomplices working on behalf of Company 1, for him to electronically sign.

25. MARK GULOW ordered braces without determining their medical necessity, for patients with whom he lacked a pre-existing doctor-patient relationship, without a physical examination, without communicating with the Medicare beneficiary, and frequently without reviewing the patient information that was provided to him.

26. MARK GULOW and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of patient files, brace orders, and other records, all to support claims to Medicare for braces that were ineligible for Medicare reimbursement, and not provided as represented.

27. Specifically, MARK GULOW (a) falsely stated that he determined, through his assessment of the Medicare beneficiary, that a particular course of treatment, including the prescription of DME, was appropriate and medically necessary; (b) falsely attested that the he was treating the Medicare beneficiary; (c) falsely represented that he had performed certain diagnostic tests prior to ordering braces; and (d) concealed the fact that he never saw the beneficiaries face-to-face, and never had any telephone conversations with the beneficiaries.

28. MARK GULOW submitted orders for DME on behalf of beneficiaries

8

residing in the Eastern District of Michigan, and elsewhere, which caused DME providers to ship DME to beneficiaries, including to beneficiaries residing in the Eastern District of Michigan, and to submit claims to Medicare that were not eligible for reimbursement.

29.     From in or around April 2020, through in or around February 2021, MARK GULOW and others submitted and caused the submission of more than $2.9 million in false and fraudulent claims to Medicare for DME that was ineligible for Medicare reimbursement because the DME was not eligible for reimbursement.

## Act in Execution of the Scheme and Artifice

30.     On or about the date specified below, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendant, MARK GULOW, aided and abetted by others, and aiding and abetting others known and unknown to the United States Attorney, submitted and caused to be submitted the following false and fraudulent claim to Medicare for DME that was, among other things, medically unnecessary not legitimately prescribed, not used, and in execution of the scheme as described in paragraphs 21 to 29:

| Count | Medicare Beneficiary | Approx. Date of Service | Claim Number | Description of Devices Billed; HCPCS Code | Approx. Amount Billed |
|---|---|---|---|---|---|
| 1 | M.L. | April 27, 2020 | 352486387A | Left Knee Brace L1851<br>Right Ankle Brace L1971<br>Left Suspension Sleeve L2397<br>Right Ankle Foot Brace L1971<br>Right Foot Stabilizer L3170<br>Left Foot Stabilizer L3170<br>Left Wrist Brace L3916 | $2,744.04 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
### Criminal Forfeiture
### (18 U.S.C. § 982(a)(7))

31.     The allegations contained in this Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

32.     Upon conviction of the violations alleged in Count 1 as set forth in this Information, the defendant, MARK GULOW, shall forfeit to the United States any property, real or personal, that constitutes or is derive, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

10

33. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of the defendant, MARK GULOW, up to the value of the forfeitable property described above.

34. Money Judgment: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of proceeds obtained as a result of defendant's violation of 18 U.S.C. § 1347, as alleged in this Information.

DAWN N. ISON
UNITED STATES ATTORNEY

LARINDA I. LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice

DUSTIN M. DAVIS
Acting Chief, Health Care Fraud Unit
Criminal Division, Fraud Section
U.S. Department of Justice

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan


s/PATRICK J. SUTER
PATRICK J. SUTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
 (202) 679-1430
patrick.suter2@usdoj.gov

Date:  July 11, 2022

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes   ☒ No | AUSA's Initials: |

**Case Title:** USA v. Mark Gulow

**County where offense occurred :** Wayne County

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

  ____Indictment/ ✓ Information --- **no** prior complaint.
  ____Indictment/____Information --- based upon prior complaint [**Case number:** _____ ]
  ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

  ☐ Corrects errors; no additional charges or defendants.
  ☐ Involves, for plea purposes, different charges or adds counts.
  ☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
|  |  |  |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

7/11/2022
Date

Patrick Suter
Patrick Suter
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 202-679
Fax:
E-Mail address: Patrick.Suter2@usdoj.gov
Attorney Bar #: CA 242494

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.